**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-13206

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

LUCIO DAZA MARQUEZ,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cr-00218-CEM-LHP-1

————————————

Before ROSENBAUM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Lucio Marquez appeals his sentence of 121 months' imprisonment for possession and receipt of child pornography as procedurally and substantively unreasonable. Marquez argues that

the district court erred by relying on the commentary to the sentencing guidelines to determine how many images were in each video of child pornography he possessed for purposes of U.S.S.G. § 2G2.2(b)(7), which enhances a defendant's offense level based on the number of images his child pornography offense involved. While the district court erred by deferring to the commentary, Marquez cannot survive plain error review because the district court erroneously calculated the number of images Marquez's offense involved in a manner that was more favorable to Marquez than if it had calculated the number of images correctly. We also reject Marquez's procedural reasonableness arguments based on what he describes as the district court's clearly erroneous findings of fact. Finally, we hold that Marquez's below-guidelines sentence was not substantively unreasonable given the amount of child pornography Marquez possessed, its content, and the fact that Marquez's offense spanned about a decade. Accordingly, we affirm.

## I.    Background

Marquez was charged with one count of possessing child pornography and two counts of receiving child pornography. He pleaded guilty to all three counts without a plea agreement.

Before the district court imposed Marquez's sentence, a probation officer prepared a presentence investigation report

("PSI"), summarizing Marquez's offense conduct as follows.[1] Undercover agents downloaded five videos from a file-sharing program that depicted eight- to 12-year-old girls engaged in oral and vaginal sex.  The agents were able to trace the computer that shared those videos to an address in Orlando, and they obtained a warrant to search that address.  Agents searched multiple laptops and hard drives seized pursuant to the warrant and identified 260 videos and 29 images of child sexual abuse material ("CSAM") that Marquez later accepted responsibility for possessing and receiving.[2] The videos included multiple instances of girls under 10 years old engaged in oral, vaginal, and anal sex.  One video was a 34-minute-and-29-second-long compilation of child pornography that included a video of an adult male having anal sex with a three- to five-year-old girl.  In conducting a forensic review of Marquez's devices, agents discovered an anti-forensic program installed on one of his laptops.

While executing the search warrant, agents interviewed Marquez, who admitted using a file-sharing program to download CSAM.   Marquez said that he had watched CSAM for approximately 10 years and that after he downloaded CSAM from the internet, he would move the downloads from his laptop to an

---

[1] Because Marquez did not "object to [the] allegations of fact in [the] PSI" he "admit[ted] those facts for sentencing purposes."  *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006).

[2] Marquez also admitted to distributing CSAM through an online file-sharing program.

external hard drive.  Marquez also told agents that "that he understood that viewing, possessing, and receiving CSAM was illegal."  Marquez "indicated that his age of preference was young girls approximately 12 years of age, but he admitted to seeing videos involving much younger children being sexually abused, including infants" but stated that he did not like videos depicting infants.

The probation officer calculated Marquez's base offense level as 34, which included a five-level enhancement under U.S.S.G. § 2G2.2(b)(7)(D) because his offense involved 600 or more images.[3]  Because Marquez had a criminal history score of zero and a criminal history category of I, the probation officer determined that the appropriate guidelines imprisonment range was 151 to 188 months.

Prior to his sentencing hearing, Marquez filed a memorandum that told the court that he sought out and attended "numerous counseling sessions" while he was on pre-trial release. Marquez attached a letter to the district court to his memorandum, which stated that he "was able to attend therapy for several weeks and that helped [him] to understand the severity of [his] crime." Marquez also submitted a report prepared by Dr. Melvin Pagán, a licensed psychologist, who evaluated Marquez for "potential areas of mitigation for the Court's consideration and to assess his risk of

---

[3] The probation officer deferred to the commentary to U.S.S.G. § 2G2.2 and treated each video as 75 images.  Using that method, the officer calculated the 260 videos and 29 photos that Marquez possessed as 19,529 images.

reoffending." Dr. Pagán concluded that Marquez was "at low risk of engaging in a future sexual offense," and his evaluation indicated that Marquez had no sexual interest in "females 6 to 13 years old or younger."

At sentencing, Marquez confirmed that he had no objections to the PSI's calculation of his guidelines range or its description of his offense conduct. The district court then adopted the guidelines range of 151 to 188 months. Marquez urged the court to consider the fact that he was 73 years old, his willingness to participate in treatment, Dr. Pagán's evaluation, and the support of his wife and daughter. Marquez addressed the court through an interpreter and stated that he "was able to go to therapy for several weeks," which "helped [him] understand the importance of [his] crime."

The court stated that it reviewed the parties' arguments, the PSI, and the advisory guidelines. Noting that it "would have loved to have seen [him] cross-examined," the court found that Dr. Pagán's conclusions regarding Marquez's low risk of recidivism and lack of interest in prepubescent children were not credible. The court described the content of the pornography Marquez possessed as "all horrible" and pointed to the fact that the videos depicted children between three and 12 years old as evidence that contradicted Dr. Pagán's report. The district court acknowledged Marquez's age but was "grave[ly] concern[ed]" by the significant amount of pornography Marquez possessed, "the length of time that he'[d] been downloading and viewing this material," "the lengths [Marquez] took to conceal what [he was] doing," and the

6                    Opinion of the Court                    24-13206

subject matter of the videos.  Additionally, the district court said that it "couldn't help but notice" that in Marquez's letter to the court and statements earlier in the sentencing hearing he said that with counseling "he's learned that what he was doing was wrong." The court thought Marquez's statement was "belied by the fact that he took very sophisticated steps to conceal what he was doing."    The court sentenced Marquez to 121 months' imprisonment.[4]

Marquez appealed.

## II.    Discussion

Marquez argues that the district court procedurally erred by misapplying the § 2G2.2(b)(7)(D) enhancement when calculating the appropriate sentencing guidelines range and by making clearly erroneous factual findings.  Marquez also argues that his sentence is substantively unreasonable because the district court afforded insufficient weight to various mitigating circumstances.  We first address the procedural reasonableness of Marquez's sentence before turning to its substantive reasonableness.

---

[4] After the district court imposed Marquez's sentence, Marquez "object[ed] to the sentence being substantively and procedurally unreasonable."  We note that an objection to a sentence is not preserved if it "is not clear enough to inform the district court of the legal basis for the objection." *United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006).

### A. Procedural reasonableness of the sentence

We typically review the procedural reasonableness of a sentence for abuse of discretion. *United States v. Touray*, 151 F.4th 1317, 1326 (11th Cir. 2025). But if a defendant does not adequately object to the procedural reasonableness of his sentence at sentencing, we review only for plain error. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). "Plain error review requires a showing that (1) there was an error; (2) it was plain; (3) it affected substantial rights; and (4) it seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Carroll*, 886 F.3d 1347, 1351 (11th Cir. 2018). The party asserting the error "has the burden of establishing each of the four requirements for plain-error relief." *Greer v. United States*, 593 U.S. 503, 508 (2021). To show that an error affected substantial rights, "the defendant ordinarily must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 585 U.S. 129, 134–35 (2018) (quotation omitted).

"To be procedurally reasonable, a defendant's guidelines range, including the application of any enhancements, must have been correctly calculated." *United States v. Isaac*, 987 F.3d 980, 990 (11th Cir. 2021). Additionally, a sentence is procedurally unreasonable if the district court "select[ed] [the] sentence based on clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51 (2007).

Marquez makes three arguments concerning the procedural reasonableness of his sentence. First, he argues that the district court plainly erred by deferring to the sentencing guidelines' commentary to find that each video involved in his offense counted as 75 images for purposes of the § 2G2.2(b)(7)(D) enhancement for offenses that involved 600 or more images. Instead, Marquez argues, each video should have counted as one image. Second, he claims that the district court sentenced him based on its erroneous finding that the psychologist who evaluated him was not credible. And third, Marquez contends that the district court sentenced him based on the mistaken belief that Marquez claimed counseling helped him learn that his conduct was wrong, which the district court did not believe. The government responds that (1) the district court's calculation of the number of images Marquez's offense involved did not affect substantial rights; (2) adequate evidence supported the court's determination that the psychologist who evaluated Marquez was not credible; and (3) even if the court misconstrued Marquez's words, any error did not affect the sentence imposed. We address each argument in turn.

### 1. The § 2G2.2(b)(7)(D) enhancement

The district court did not plainly err by applying the § 2G2.2(b)(7)(D) offense-level enhancement.[5] Under § 2G2.2(b)(7)(D), a defendant's offense level is increased by five

---

[5] Because Marquez objected to the district court's application of this sentencing enhancement for the first time on appeal, we review for plain error. *Carroll*, 886 F.3d at 1351.

levels if his child pornography offense involved 600 or more "images." U.S.S.G. § 2G2.2(b)(7)(D). The text of the sentencing guidelines does not define "images," but the commentary to the guidelines defines "images" as "any visual depiction . . . that constitutes child pornography." *Id*. § 2G2.2, cmt. (n.6(A)). The commentary further instructs that "[e]ach photograph, picture, computer or computer-generated image, or any similar visual depiction shall be considered to be one image," and "[e]ach video, video-clip, movie, or similar visual depiction shall be considered to have 75 images." *Id*. § 2G2.2, cmt. (n.6(B)). In *United States v. Dupree*, we held that a court should not defer to the commentary unless the text of the guideline is ambiguous. 57 F.4th 1269, 1273–77 (11th Cir. 2023) (en banc).

While this case was pending on appeal, we decided *United States v. Kluge* and held that "§ 2G2.2(b)(7) unambiguously dictates that each video frame containing child pornography counts as one image." 147 F.4th 1291, 1301 (11th Cir. 2025). In *Kluge*, we explained that deference to the commentary was not appropriate because the word "'images' as used in § 2G2.2(b)(7) is plain and unambiguous," and "there is no doubt that 'image' means 'frame' in the context of a video." *Id*. at 1298–1300. So, we held, "[t]o calculate this sentencing enhancement, the government must present evidence for the district court to determine the number of frames containing child pornography," which "could likely be accomplished by first identifying how many seconds within the video contain child pornography and then multiplying that

number by the video's frame rate." *Id.* at 1301 (alteration adopted) (quotation omitted).

*Kluge* makes clear that the district court erred by deferring to the commentary's instruction to count each video as 75 images for purposes of § 2G2.2(b)(7). *See id.* at 1298–1300. But Marquez cannot satisfy the third prong of plain error review (that any error affected substantial rights) because he cannot show that there was a "reasonable probability that, but for the error, the outcome of the proceeding would have been different." *See Rosales-Mireles*, 585 U.S. at 134–35 (quotation omitted). Standard videos contain 24 frames per second. *See United States v. Haggerty*, 107 F.4th 175, 188 (3d Cir. 2024) (reiterating the Motion Picture Association's definition of video as containing 24 frames per second); *see also What Is a Frame Rate?*, Adobe, https://www.adobe.com/creativecloud/video/discover/frame-rate.html [https://perma.cc/D4PK-KW7Y] (last visited June 17, 2026) ("Motion pictures, TV broadcasts, streaming video content, and even smartphones use the standard frame rate of 24fps."). One of the 260 videos of child pornography that Marquez possessed was 34 minutes and 29 seconds long. Applying the standard frame rate, that video alone likely contained tens of thousands of frames (and therefore images) of child pornography.[6]    Because the district

---

[6] Applying the standard frame rate to the remaining 259 videos that Marquez possessed would likely result in finding that Marquez's offense involved tens of thousands more images. And Marquez does not argue that the videos involved in his offense contain a substantial number of non-pornographic frames.

court's erroneous calculation led it to apply the five-level enhancement that correctly applies to offenses involving 600 or more images, Marquez cannot show a reasonable probability that his sentence would have been lower but for the error. Accordingly, we affirm the district court's application of a five-level enhancement to Marquez's offense level under § 2G2.2(b)(7)(D).

## 2. Expert Credibility

The district court did not abuse its discretion by finding that Dr. Pagán, the psychologist who evaluated Marquez, lacked credibility.[7] As the district court explained, the undisputed evidence contradicts Dr. Pagán's findings that Marquez was not sexually interested in prepubescent children and shows that Marquez possessed pornography that depicted prepubescent children ranging from three to 12 years old. Marquez also told FBI agents that "his age of preference was young girls approximately 12 years of age," and that he watched "videos involving much younger children being sexually abused, including infants." Marquez only disclaimed an interest in the videos involving infants. Because Dr. Pagán's conclusion regarding Marquez's sexual interests was contrary to Marquez's own statements about his sexual interests and the pornography he watched, the district court did not abuse its discretion by finding that Dr. Pagán lacked

---

[7] The parties dispute whether Marquez properly preserved this challenge below. We need not resolve that dispute because we find that the government prevails even if we assume that Marquez adequately presented this argument below and review the district court's conclusion for abuse of discretion.

credibility.  *See United States v. Plasencia*, 886 F.3d 1336, 1343 (11th Cir. 2018) (per curiam) ("[W]e provide substantial deference to the court's credibility determinations at sentencing." (quotation omitted)).

Neither of Marquez's counterarguments persuade us to reach a different conclusion.  Marquez first argues that the district court improperly relied on Marquez's past conduct to discredit Dr. Pagán's conclusions regarding Marquez's risk of recidivism.  But Marquez does not explain why a court's predictions of future behavior cannot be supported by examples of prior conduct.  And Marquez's offense conduct was particularly relevant here because it contradicted a premise of Dr. Pagán's conclusions—that Marquez had no sexual interest in "females 6 to 13 years old or younger."  Second, Marquez argues that the district court should not have discredited Dr. Pagán's conclusions because they were not disputed by another psychologist, but no authority prevents the district court from making common sense credibility determinations without competing professional testimony.[8]

---

[8] To support this argument, Marquez relies on *United States v. Nixon*, a Fourth Circuit case that held a defendant's sentence was procedurally unreasonable because the district court rejected unrebutted expert testimony that some of the defendant's conduct was the result of untreated bipolar disorder.  130 F.4th 420, 435–37 (4th Cir. 2025).  *Nixon* is not binding on this Court and is, in any event, distinguishable because the sentencing court in that case, "without any justification," substituted the expert's conclusions with "its personal views on mental health and human behavior" despite a lack of "any countervailing evidence" or "any reasons to discredit the expert's testimony."  *Id.*  Here, however, the district court did justify its credibility determination and relied

24-13206                Opinion of the Court                13

### 3. Learning his conduct was wrong from counseling

The district court did not plainly err by stating that Marquez told the court that with counseling he learned that his conduct was wrong.[9]  While Marquez claimed that counseling helped him understand the "severity" and "importance" of his crime, not that his conduct was "wrong," he cannot show that the district court's restatement of his position affected his substantial rights because there is not a "reasonable probability that, but for the [court's arguable misstatement], the outcome of the proceeding would have been different." *See Rosales-Mireles*, 585 U.S. at 134–35 (quotation omitted).  At the sentencing hearing, the district court listed its factual considerations in fashioning Marquez's sentence, which included the amount of child pornography involved, the fact that the offense conduct spanned about 10 years, and Marquez's efforts to conceal his conduct.  The court mentioned Marquez's statements as an aside to his listed considerations and said that it "couldn't help but notice" that Marquez claimed that with counseling "he's learned that what he was doing was wrong," which the court did not credit given the "very sophisticated steps" Marquez took to conceal his actions.  And the fact that Marquez took "very sophisticated steps" to conceal his child pornography

---

on Marquez's admitted offense conduct as countervailing evidence that discredited Dr. Pagán.

[9] We review this issue for plain error because Marquez only objected generally to his sentence being substantively and procedurally unreasonable and did not object to the district court's characterization of his statements below. *See Massey*, 443 F.3d at 819.

does not just belie the fact that he needed counseling to learn what he did was wrong, it also indicates that he recognized the "importance" or "severity" of his crime before counseling and attempted to evade detection. Accordingly, there is not a reasonable probability that but for the district court's restatement of Marquez's letter and allocution, it would have imposed a lower sentence. Thus, Marquez's challenge to the district court's restatement fails. *See id.* at 134–35.

### B. Substantive reasonableness of the sentence

We review the substantive reasonableness of a sentence under a "deferential abuse-of-discretion standard," and "take into account the totality of the circumstances." *Gall*, 552 U.S. at 41, 51.

Marquez argues that his sentence is substantively unreasonable because the district court did not give sufficient weight to mitigating facts like his family support and stable employment.[10] The government responds that the district court considered the mitigating facts to which Marquez points, and Marquez cannot show that his sentence was outside the range of reasonable sentences dictated by the facts of the case.

A district court abuses its discretion in imposing a sentence when it (1) fails to consider relevant factors that were due

---

[10] To the extent that Marquez reasserts his arguments that the district court made erroneous factual findings as indicators of substantive unreasonableness, we do not address those arguments again in our substantive reasonableness discussion because "selecting a sentence based on clearly erroneous facts" is a procedural error. *Gall*, 552 U.S. at 51.

significant weight; (2) gives an improper or irrelevant factor significant weight; or (3) commits a clear error of judgment by balancing the proper factors unreasonably. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). We vacate a sentence as substantively unreasonable only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (quotations omitted). The party challenging the sentence bears the burden of showing that the sentence is unreasonable. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). We grant substantial deference to the sentencing court. *Id.*

We begin by noting that Marquez's sentence of 121 months' imprisonment was below his guidelines range of 151 to 188 months and the statutory maximum of 60 years, which is an indication the sentence was reasonable. *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) ("Although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily . . . expect a sentence within the Guidelines range to be reasonable." (omission in original) (quotation omitted)); *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (per curiam) (explaining that a sentence that is "well below" the statutory maximum is an indicator of reasonableness).

Additionally, we cannot say that the district court committed a clear error of judgment by giving less weight to

Marquez's family support and stable employment than to (1) the fact that Marquez gathered child pornography for approximately 10 years; (2) the amount of child pornography involved in Marquez's offense—260 videos and 29 images; (3) the steps Marquez took to conceal his actions, like moving the child pornography from his laptop to an external hard drive and installing an anti-forensic program on his laptop; and (4) the serious subject matter of the pornography, which included multiple videos of adult men having sex with girls under 10 years old.

Particularly given the substantial deference we afford to sentencing courts, *Rosales-Bruno*, 789 F.3d at 1256, Marquez's below-guidelines sentence was not "outside the range of reasonable sentences dictated by the facts of the case," *see Irey*, 612 F.3d at 1190. Thus, Marquez's sentence was substantively reasonable.

### III.    Conclusion

Marquez's sentence was procedurally and substantively reasonable. Accordingly, we affirm.

**AFFIRMED.**